# UNITED STATES DISTRICT COURT
for the
Eastern District of Virginia

FILED
NOV 13 2020
CLERK, U.S. DISTRICT COURT
RICHMOND, VA

| United States of America | ) | |
| --- | --- | --- |
| v. | ) | Case No. Under Seal |
| Kenneth L. OTEY, Jr. | ) | 3:20mj140 |
| *Defendant(s)* | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __2016 - July 2020__ in the city/county of __Charles City, VA__
in the __Eastern__ District of __Virginia__, the defendant(s) violated:

| Code Section | Offense Description |
| --- | --- |
| Title 21, United States Code, Sections 846, 841(a)(1), and (b)(1)(C) | Conspiracy to Possess with Intent to Distribute and Distribute Cocaine and Heroin |

This criminal complaint is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

Reviewed by AUSA/SAUSA
Stephen E. Anthony
*Printed name and title*

*Complainant's signature*
Vaughan Livengood, Task Force Officer, DEA
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
Telephone _____ *(specify reliable electronic means)*.

Date: 11/13/20

/s/
*Judge's signature*

City and state: Richmond, VA

Hon. Henry E. Hudson, US District Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Vaughan S. Livengood, a Task Force Officer with the Drug Enforcement Administration (DEA), Department of Justice, Eastern District of Virginia, being duly sworn, states as follows:

### Introduction

1. I am a law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7). I am therefore, an officer of the United States who is empowered to conduct investigation of, and to make arrest for, the offenses enumerated in Title 21. I was hired by the Henrico County Police Division in 2004 and am currently assigned to the Drug Enforcement Administration as a Task Force Officer since 2015. As a Task Force Officer, I am a "Federal Law Enforcement Officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant. Prior to being assigned as a Task Force Officer, I investigated vice and narcotics related crimes from 2010 through 2015. In my work with the Henrico County Police Department as a Vice and Narcotics Detective, I have participated in numerous criminal investigations, including many involving drug trafficking. I have conducted or participated in physical and electronic surveillance, including court authorized wire interceptions, participated and planned the execution of search warrants, conducted debriefings of confidential sources, cooperators, and suspects, and reviewed recorded conversations and narcotics records. Through my training, education, and experience, I have become familiar with the manner in which individuals and groups organize to conduct their operations, as well as means generally employed to avoid detection by law enforcement. Among

other duties, I am currently involved in investigations that focus on an illegal drug trafficking organization operating in and around the metro-Richmond area.

2. I have attended classes and courses conducted by local, state, and federal agencies regarding the importation, transportation, and distribution of illegal drugs. I am knowledgeable about state and federal drug laws. I have participated in a number of drug trafficking, money laundering, and organized crime investigations that have resulted in the arrest of numerous members of several different international and domestic DTOs, and the seizure of currency, assets, and drugs. Several of these investigations have employed electronic surveillance as an investigative technique, and I have submitted affidavits in the Eastern District of Virginia in support of applications for court orders authorizing the use of electronic interceptions. I have directed and participated in many searches of the residences and businesses of suspected drug traffickers for evidence of criminal activity. I have also conducted and participated in the debriefing of many drug traffickers and money launderers, through which I have learned valuable information regarding the techniques used by DTOs to distribute drugs. Additionally, I have testified in numerous grand jury proceedings related to the investigation of individuals involved in drug trafficking and money laundering. As a result of my training and experience, I am familiar with the way in which DTOs illegally traffic, transport, and distribute drugs, and the way in which they launder the proceeds derived from their drug distribution activity.

3. I present this affidavit in support of a criminal complaint for Kenneth Leon OTEY, Jr., charging that for the period of 2016 through on or about August 2020, OTEY did conspire with others to possess with intent to distribute and to distribute cocaine and heroin, in violation of Title 21, United States Code, Sections 846, 841(a)(1), and 841(b)(1)(C). All information contained in this affidavit is either based on your affiant's personal knowledge and

observations, or the knowledge and observations of cooperating sources and other law enforcement officers. This affidavit is not intended to include every fact and matter known to your affiant or the United States. I have set forth only those facts necessary to support probable cause for this action.

4. The facts set forth in this Affidavit are based on my personal participation in this investigation and from information provided by Special Agents, Task Force Agents, and Police Officers (collectively referred to as the "Agents") from various federal, state, and local law enforcement agencies, and on my experience, training, and background as a DEA Special Agent. This affidavit is prepared solely for establishing probable cause to support this criminal complaint. I have not included every fact known to me concerning this investigation and have set forth only the facts necessary to support the issuance of an arrest warrant.

## Probable Cause

5. In August of 2018, the DEA began investigating Kenneth Leon OTEY Jr., aka "Toe," as the leader of the OTEY drug trafficking organization (the "OTEY DTO"), for distributing multi-kilogram quantities of cocaine, heroin, and marijuana in central Virginia and North Carolina. The OTEY DTO consists of OTEY's family members, OTEY's longtime friends, and other OTEY associates, both known and unknown. The DEA has received information that OTEY and his associates have been purchasing drugs from unknown sources for further distribution throughout Central Virginia and North Carolina for the past several years. Agents have interviewed multiple defendants and have consensual recordings of communications between a cooperator and Kenneth OTEY.

6. Several members in OTEY's DTO have been arrested, prosecuted, and convicted of narcotics distribution related offenses. Several of these subjects have proffered and

subsequently provided information about OTEY and his DTO. These individuals consist of OTEY's previous sources of supply, associates, money launderers, and several of his customers. These individuals have provided information that OTEY has been involved in the distribution of multi-kilogram quantities of heroin, cocaine, and marijuana from 2016 through present. One cooperator admitted to sourcing OTEY multi-kilogram quantities of marijuana, heroin, and cocaine. This arrangement began in late 2016 and ran through this cooperator's arrest in May of 2018. After the arrest, OTEY's DTO obtained alternate sources of supply and continued to obtain multi-kilogram quantities of heroin, cocaine, and marijuana.

7. In late 2019 through early 2020, DEA utilized a confidential informant to make several controlled purchases of narcotics from OTEY and other members of his DTO. These transactions consisted of a purchase directly from OTEY, as well as several other transactions from OTEY's DTO which were done at OTEY's direction.

8. On November 20, 2019, the confidential informant was provided a 3 gram "sample" of heroin from Jequan CARROLL. This transaction was done at the behest of OTEY. This transaction was recorded by both audio and video recording. The informant and the informant's vehicle were searched before and after the transaction. The drugs appeared similar in size, shape, and appearance to heroin. The drugs were submitted to the Mid Atlantic Lab for testing. The results have not yet been returned.

9. On November 22, 2019, the confidential informant was utilized to conduct a controlled purchase of heroin from Jequan CARROLL. This transaction was done at the behest of OTEY. This transaction was recorded by both audio and video recording. The informant and the informant's vehicle were searched before and after the transaction. The drugs appeared

similar in size, shape, and appearance to heroin. The drugs were submitted to the Mid Atlantic Lab for testing. The results were returned showing 16.79 grams of heroin with a 95% purity.

9. On November 26, 2019, the confidential informant was utilized to conduct a controlled purchase of heroin from Jequan CARROLL. This transaction was done at the behest of OTEY. CARROLL provided the informant with approximately 5 grams of heroin owed from the previous transaction. This transaction was recorded by both audio and video recording. The informant and the informant's vehicle were searched before and after the transaction. The drugs appeared similar in size, shape, and appearance to heroin. The drugs were submitted to the Mid Atlantic Lab for testing. The results have not yet been returned.

10. All three of these transactions were done through coordination between OTEY, CARROLL, and the confidential informant. For these transactions the confidential informant provided CARROLL with United States currency in exchange for a powder similar in size, shape and appearance to heroin.

11. On March 19, 2020, the confidential informant was utilized to conduct a controlled purchase of heroin directly from Kenneth OTEY. OTEY provided the informant with approximately two ounces of heroin. This transaction was recorded by audio recording. The informant and the informant's vehicle were searched before and after the transaction. The drugs appeared similar in size, shape, and appearance to heroin. The drugs were submitted to the Mid Atlantic Lab for testing. The results were returned showing 55.65 grams of heroin combined with fentanyl.

12. On June 18, 2020, United States District Judge Henry Hudson signed an affidavit authorizing wire and electronic intercept for two phones associated with Kenneth OTEY – (980) 579-7523 and (310) 613-9827. This search warrant covered wire and electronic interceptions

from June 19, 2020 through July 17, 2020. The court extended this search warrant for interceptions from July 20, 2020, through August 20, 2020.

13. During analysis of the wire and electronic intercepts of phones utilized by OTEY, Viktorya CEPEDA became identified as a cocaine source of supply for OTEY. CEPEDA was previously known to agents as having laundered money for the Kenneth OTEY DTO. The laundered money was then provided to her husband, and OTEY's then source of supply, David MARES. On May 9, 2019 MARES was arrested in North Carolina while in possession of kilogram quantities of cocaine, some of which were destined for Kenneth OTEY.

14. On June 26, 2020, OTEY received a shipment containing two packages of suspected cocaine through the United States Postal Service. These shipments were mailed from two separate post offices in south Texas and destined for a PO Box in Providence Forge, Virginia. After the shipment arrived in the Providence Forge Post Office, OTEY called BROOKS and instructed him to go the post office and "check out the scenery." After several minutes BROOKS called OTEY back and advised him that the post office and neighboring parking lots all appeared clear. OTEY instructed BROOKS to stay there and continue to watch the location. These conversations appear to indicate that OTEY instructed BROOKS to act as a lookout for the pickup of the suspected drug shipments. Subsequent phone conversations would indicate that OTEY instructed a third party to pick up the narcotics from the post office. BROOKS followed that person from the post office back to 8620 Courthouse Road. Surveillance at 8620 Courthouse Road showed BROOKS and OTEY actively involved in drug distribution following this shipment. These drug transactions were corroborated by electronic and wire interceptions in which OTEY discussed these drug transactions. These conversations

consisted of pricing and quantity consistent with cocaine distribution. In one conversation Steven BROOKS instructed OTEY to get "fourteen" ready for "D" who was on the way.

15.  These postal shipments were similar to several other multi-kilogram cocaine shipments destined for various location associated with OTEY. Several of these shipments were seized by law enforcement to include:

- March 14, 2018, two seized shipments, each containing 2 kilograms of cocaine. Packages were shipped from Valley Baptist Medical Center. The first package was destined for an associate of OTEY's in Williamsburg, VA. The second package was address to Mark COHEN, a known alias utilized by OTEY, at his home address (9118 Korniv Drive, Charlotte, NC). This shipment was verified to be destined for OTEY through cooperators.

- August 9, 2018, shipment containing two half kilograms of cocaine shipped by Enrique PUENTE to Shareaka VINSON and Amonte SPEID to two post office in the metro Richmond area. PUENTE and SPEID were later arrested, charged, and convicted for narcotics related offenses relating to these shipments. These shipments were verified to be destined for OTEY through cooperators testimony

16.  Also on June 26, 2020, a DEA confidential informant relayed information that he had seen OTEY with several "bricks" in the back of his Ford pickup truck. The informant believed the drugs to be kilograms of cocaine. OTEY explained to the informant that he had just received the drugs from his female source in Texas for $25,000 per kilogram. This description matches Viktorya CEPEDA, his known source of supply. Further electronic and wire intercepts would later verify CEPEDA as having sourced OTEY with this shipment.

17. Follow-up phone calls between CEPEDA and OTEY on June 26, 2020, appeared to discuss money owed to CEPEDA by OTEY for the successful delivery of these narcotics. CEPEDA indicated that she had to pay $1,000. OTEY stated that he is going to give her what he owed her plus the $1,000. OTEY later confirmed that he owes her fourteen-five ($14,500). On June 29, 2020, OTEY and CEPEDA discussed placing an order for another shipment. CEPEDA indicated that OTEY asked for two (kilograms) last time but she expressed that it was a lot of money. OTEY agreed and stated that he might as well just get one. CEPEDA confirmed.

18. Postal records identified a similar shipment also mailed from south Texas to Charles City, Virginia on June 3, 2020. This shipment, like the previous two, were addressed to Cierra/Ciera Jones, PO Box 393, Providence Forge, VA 23140. Ciera Jones is a known associate of Kenneth OTEY. OTEY's aunt, Elsie WOODLEY, is also an employee of the Post Office which received these shipments. WOODLEY helped facilitate the pickup of the June 26, 2020, shipment from the post office.

### Conclusion

19. Based upon the above facts and my training and experience, there exists probable cause to believe that for the period of 2016 through 2020, Kenneth Leon OTEY, Jr. did knowingly conspire with others to possess with intent to distribute and to distribute cocaine and heroin, in violation of Title 21, United States Code, Sections 846, 841(a)(1), and 841(b)(1)(C).

20. I respectfully request that an arrest warrant be issued, authorizing the arrest of Kenneth Leon OTEY, Jr. for a violation of Title 21, United States Code, Sections 846, 841(a)(1), and 841(b)(1)(C). I declare under penalty of perjury that the statements above are true and correct to the best of my knowledge and belief.

_____
Vaughan S. Livengood
Task Force Officer
Drug Enforcement Administration


Sworn to and subscribed before me
This 13th day of November 2020
In the City of Richmond, VA.

_____ /s/
United States District Judge